UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MOHAMMAD MAHMOUD KHAN,

        Plaintiff,

    -v-                                    No.  13 CV 1919-LTS

HILTON WORLDWIDE, INC.,

        Defendant.

--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        This case was tried to a jury, which rendered its verdict on December 14, 2015. The jury found that Defendant Hilton Worldwide, Inc. ("Hilton") terminated Plaintiff Mohammad Mahmoud Khan's employment in violation of the Age Discrimination in Employment Act ("ADEA"), and awarded Plaintiff $250,000 in back pay.  (See docket entry no. 111.)  Hilton now moves for: (1) entry of judgment for Defendants as a matter of law, pursuant to Fed. R. Civ. P. 50(b); or (2) vacatur of the jury verdict and a new trial, pursuant to Fed. R. Civ. P. 59(a); or (3) an amended judgment, pursuant to Fed. R. Civ. P. 59(e).  For the reasons that follow, Hilton's motions for judgment as a matter of law and a new trial are denied, and Hilton's motion for an amended judgment is granted in part.

## BACKGROUND

        A general familiarity with the facts of this case is presumed.  The following is a summary of the trial evidence principally relevant to the issues raised in this motion practice.

        Plaintiff Mohammad Khan was employed by Hilton at Hilton's Midtown

Manhattan location as an assistant front office manager.  (Tr.[1] 70, 113.)  At the time of his termination in October 2012, Khan was 61 years old.  (Tr. 69.)

Khan testified that he received uniformly positive performance evaluations and customer feedback until receiving his review covering the year 2011, which was delivered on February 17, 2012, three days after Khan turned 60 years old.  (Tr. 72-89.)  Copies of Khan's written reviews for the years 2004-2011, which generally corroborated his testimony, were received in evidence.  (Exs. 2-9.)  The 2011 review, which was the first to comment negatively on Khan's performance, resulted in Khan being placed on probation by Brian Martens and Eric Thieling, two of Khan's supervisors at Hilton.  (Tr. 93.)  Thieling had become Khan's supervisor in June 2011, and so completed Khan's 2011 review based on only six months of observation. (Tr. 438, 459.)  Thieling was 29 years old at the time of Khan's 2011 review.  (Tr. 459.) Thieling testified as follows on cross-examination, when asked why his review of Khan was the first negative review in Khan's file:

> Q.  Do you think that has anything to do with what you testified to as to the new leadership at the hotel?
> A.  Yes.
> Q.  New leadership means new blood, correct?
> A.  Correct.
> Q.  A lot of new people at the hotel mixes things up, correct?
> A.  Correct.
> Q.  A lot of younger people, correct?
> A.  Mix.
> Q.  Mix, but includes younger people such as yourself, correct?
> A.  Yes.

(Tr. 463.)

Further, when asked on cross-examination about his comment in Khan's review

---

[1]   Citations to "Tr." refer to the transcript of the trial in this matter, docket entry nos. 112-123.

that "Mr. Khan has been a part of the Hilton New York operation for a very long time," Thieling

testified:

> Q.  Did you feel that he was getting on in age and was too old for his job?
> A.  No.
> Q.  Well, you felt like he couldn't do his job effectively, correct?
> A.  I felt like we were doing things differently and, you know, it was just time for him to try to do things differently.

(Tr. 474.)

Khan's probationary period involved completion of a "performance improvement

plan" ("PIP").  (Ex. 10; Tr. 448-451.)  Khan successfully completed the PIP and his probationary

period ended on July 16, 2012.  (Tr. 93.)

On August 6, 2012, Clara Bido, a Hilton employee subordinate to Khan who had

been suspended from her prearrivals desk position in connection with a broader investigation of

practices relating to changes in reservations and passing of counterfeit currency, telephoned the

prearrivals desk at the Hilton.  (Tr. 101.)  The prearrivals desk transferred Bido's call to Khan,

who was the manager on duty at the time, and Bido asked Khan to change one of her

reservations.  (Tr. 101.)  In response to Bido's request, Khan reduced the length of a room

reservation from six days to five days.  (Tr. 101.)  In Hilton terminology, the kind of reservation

change that Khan made at Bido's request was a "force sell" or "force sale."  (Tr. 101.)

Khan testified that he did not know Bido was suspended at the time he took her

call.  (Tr. 104.)  Anthony Spagnuolo, Hilton's head of security, testified that he had later asked

Khan why he would take instruction from a suspended employee, and Khan told him in response

that he had known that Bido would be coming back to work.  (Tr. 636.)  Charles "Chuck" Wing,

Hilton's director of human resources, whose deposition testimony was introduced at trial,

testified that there was no formal process for notification of supervisors about employee

suspensions, due to "privacy and confidentiality concerns." (Tr. 431.) Thieling testified that he had personally communicated the fact of Bido's suspension to "the managers," without specifying whether this group included Khan. (Tr. 454.) However, on cross-examination, Thieling acknowledged that he had already left his position at the Midtown Manhattan Hilton by the date that Bido was suspended. (Tr. 457-58.) Martens testified generally that Bido "was suspended, and therefore the staff knew." (Tr. 563.) Martens clarified, however, that "I was not there, but it is proper protocol to communicate to the managers why somebody was not there." (Tr. 564.) Documentary evidence was introduced that showed Bido having been taken off the weekly work assignment calendar for several weeks before her call to Khan. (Ex. J.)

Later in the day on August 6, Khan was called into the office of Ken Jarka, the hotel manager, to speak with Jarka and Spagnuolo about his conversation with Bido and the reservation change. (Tr. 104.) Several days later, Khan was called into Wing's office. (Tr. 105.) Khan testified that Wing began the meeting by asking Khan when he planned to retire, and that Khan had replied that he might work until he was 70 years old (i.e., for about 10 more years) because he was still in good health. (Tr. 105.) Wing testified that he did not recall whether he had asked Khan about his retirement plans. (Tr. 423.) Khan testified that Wing then brought up the reservation change Khan had made at Bido's request, and told Khan that "corporate" had lost trust in Khan's judgment over that change. (Tr. 105.) According to Khan, Wing told Khan the following Monday that he was being terminated, without providing any reason or citing any policy that Khan had violated as the basis for the termination. (Tr. 105.) Khan's employment with Hilton was terminated effective October 28, 2012. (Ex. 16.)

The reason for Khan's termination was the subject of extensive testimony and evidentiary submissions. Krystal Eng, Hilton's director of front office, who testified as a

corporate representative, stated that Khan was "terminated for poor judgment." (Tr. 326-27.)

When asked about the factual basis for the determination that Khan had poor judgment, Eng

testified that Khan had acted "[i]n flagrant disregard for company – company interests." (Tr.

327.[2]) When asked about the factual basis of the determination that Khan had flagrantly

disregarded company interests, Eng testified that Khan was terminated because he "[w]as taking

directions from a suspended employee." (Tr. 327-28.) However, Eng also answered "yes" when

asked on cross-examination whether "Mr. Khan was fired for making the reservation change."

(Tr. 336.)

Wing, the director of human resources, testified that the only policy that Khan

had violated was "flagrant disregard for company interests." (Tr. 428.) Wing agreed when

asked whether the "flagrant disregard" policy was "essentially a catchall" provision. (Tr. 433-

34.) Wing also testified that he was not aware of any "error in judgment" that Khan had

committed while employed at Hilton. (Tr. 428.)

Jarka testified on direct examination that the basis for the decision to terminate

Khan was "[f]lagrant disregard of company policy, which also, we were concerned about the

trust factor, him being a manager, as well." (Tr. 555.) When asked to clarify the 'trust factor'

that lead to Khan's termination, Jarka testified that it related to Khan's "[p]oor judgment of

communicating to Clara Bido when she was out on suspension pending investigation." (Tr.

555.)

On cross-examination, Jarka clarified that his earlier testimony referred to

---

[2]     Hilton's Team Member Handbook, which was received in evidence as Ex. M, states
that one potential ground for an employee's termination is "[f]lagrant disregard of
Company interests and actions which damage team member morale." (Ex. M at
D000494.)

"communicating with Ms. Bido at the time when she was out on suspension pending investigation and taking directive, instructions regarding questionable reservations."  (Tr. 571.) Martens testified that the reservation was questionable because "there was a scam happening at the property.  There was counterfeit money involved . . . ."  (Tr. 573.)  Jarka had difficulty identifying, on cross-examination, the policy he believed that Khan had violated, testifying that "[i]t's flagrant disregard of company – company – it's flagrant disregard of company – it's not issues.  It's – I don't recall right now, but it's basically poor judgment."  (Tr. 576.)

The Hilton "Personnel Authorization Form" reflecting Khan's termination, which was received in evidence, has crossed-out language in and immediately below a blank labeled "Reason Explanation," and the words "Unsatisfactory Performance" written under the crossed-out language.  (Ex. 40.)

The parties also introduced evidence that Bido, who was a member of the union representing Hilton employees, and Giovany Bernal, another union member,[3] were disciplined but not terminated for force sales.[4]  (Tr. 281 (Bido); 400-01 (Bernal).)  Bido testified that she

---

[3]     Although Hilton has represented that Bernal was also a member of the union, no evidence regarding Bernal's union membership was introduced at trial.

[4]     The issue of evidence regarding disciplinary actions taken against Bido and Bernal for force selling was the subject of a motion in limine by the Defendant, which moved to exclude testimony regarding union employees' discipline on the grounds that those employees were not similarly situated to Khan as a matter of law.  At the hearing on the motions in limine, Hilton's counsel represented that neither of the union employees in question had been disciplined in accordance with the procedures in the union contract, and that their discipline had been a matter of discretion.  The Court therefore denied the motion in limine because the actual discipline the union employees received was not dictated by the union contract, but permitted Hilton to introduce evidence concerning the constraints imposed by the union contract and other evidence relevant to the comparability of their circumstances with those of Mr. Khan.

Plaintiff moved in limine to exclude evidence relating to Khan's other force sales.

was a union employee, and that there was a contractual grievance process and requirement of progressive discipline for union employees, as well as a requirement of just cause for termination.  (Tr. 281, 308-309, 319-20.)  Both Bido and Bernal are younger than Plaintiff.

According to Hilton's response to a request for pre-trial admissions, which was received in evidence, Hilton hired two employees to replace Khan: Alexandra Erbiti, who was born in 1990, and Cody O'Leary, who was born in 1984.  (Tr. 352; Ex. 17.)  Erbiti was hired on November 26, 2012, roughly one month after Khan's termination.  (Tr. 353, Ex. 17.)  At the time she was hired, Erbiti was a recent college graduate with no more than six months' experience. (Tr. 353; Ex. 25.)  According to Hilton's description of the front office manager position, the job "required" "two to three years of hotel experience."  (Ex. 1; Tr. 350.)  Eng testified, however, that Hilton did not hire Erbiti as an assistant front office manager, but rather hired her into a "trainee program" with the expectation that she would eventually become an assistant front office manager.  (Tr. 353-54.)

James Pellegrinon, Hilton's director of labor relations, and Martens testified regarding the ages of the assistant front office managers Hilton hired from 2011 through 2013. (Tr. 401-411; 601-604.)  Of the individuals Pellegrinon and Martens discussed, seven of the eight new hires were in their 20s or 30s, and one was over the age of 40.  (Tr. 419; 604.)

Khan's testimony provided the sole evidence relating to damages.  Khan testified that he began his job search on December 21, 2012, roughly two months after his termination. (Tr. 123.)  Khan testified about several New York City-area hotels he had applied to directly, as well as about his use of an online job service.  (Tr. 123-136.)  Khan testified that his search was

In light of Hilton's denial that force sales were the reason for Khan's termination, the Court granted Plaintiff's motion to preclude Hilton from introducing evidence that Khan had engaged in force selling in the past.

uniformly unsuccessful and that, without a source of income, he had applied for and begun to receive early Social Security and pension benefits in or around February 2014.  (Tr. 136.)  Khan also testified about the amount of salary and other benefits he believed he would have received had he not been terminated: (1) for the remainder of 2012 after his termination, $11,000 in salary; (2) for 2013, $60,000 in salary; (3) for 2014, about $62,000 in salary; (4) for 2015, about $64,000 in salary; (5) health benefits that would have saved him about $29,000 in out-of-pocket costs during the relevant period; (6) $11,000 in lost Social Security benefits, and (7) $6,000 in lost pension benefits due to taking early retirement.  (Tr. 143-144.)  Khan approximated the total loss at $250,000, although the figures he proffered in his testimony add up to $243,000.

After slightly more than one day of deliberation, the jury found that Khan had been terminated because of his age, but that Hilton had not violated the ADEA wilfully.  Despite the Court's instructions not to include Social Security benefits in its damages calculations, and to only include lost wages and benefits Khan would have received from Hilton had he not been terminated, the jury awarded Khan $250,000 in damages.  (Docket entry no. 111.)

<u>DISCUSSION</u>

<u>Defendant's Motion for Judgment as a Matter of Law</u>

<u>Legal Standard</u>

A district court may set aside a jury verdict pursuant to Federal Rule of Civil Procedure 50 only if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him."  <u>Bucalo v. Shelter Island Union Free Sch. Dist.</u>, 691 F.3d 119, 127-28 (2d Cir. 2012). The court must not weigh the evidence or assess

credibility, and must defer to the jury's determinations and reasonable inferences that may be drawn from those determinations.  <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 289 (2d Cir. 1998).  The court must view all of the evidence in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences the jury might have drawn in its favor.  <u>Norton v. Sam's Club</u>, 145 F.3d 114, 118 (2d Cir. 1998).

Plaintiff's lawsuit was brought pursuant to the ADEA, which prohibits an employer from, <u>inter alia</u>, terminating an employee "because of such individual's age."  29 U.S.C. § 623(a)(1).  To obtain relief under the ADEA, Plaintiff must prove, by a preponderance of the evidence, that age was the "but-for" case of his termination.  <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 180 (2009).  Plaintiff's causation evidence may be either direct or circumstantial.  <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 135 (2d Cir. 2000).

<u>Analysis</u>

Applying the legal standards outlined above, the Court concludes that the testimonial and documentary evidence submitted at trial, when considered in the light most favorable to the Plaintiff, was sufficient to support the jury's verdict.

Where, as here, the defendant proffers a putatively legitimate non-discriminatory reason for its adverse employment action, the plaintiff retains the ultimate burden of proving that age was the but-for cause of that action.  In determining whether the plaintiff has met this burden, the jury may consider whether the reason given by the defendant was a pretext for prohibited discrimination, and the jury was instructed to that effect.

Based on the evidence admitted at trial, a reasonable jury could have concluded that Hilton's proffered reasons were pretextual.  The jury could have determined that the often inconsistent and inarticulate explanations proffered by Hilton's witnesses for Khan's termination

were not credible and were indicative of pretext.  At least two witnesses (Eng and Jarka) repeatedly conflated the "flagrant disregard of company interests" policy with the concept of "poor judgment."  Witnesses were unable to articulate what exactly about Khan's conduct was flagrant (Eng), or what company interest Khan had disregarded (Wing).  Jarka, one of the individuals identified as being part of the group that decided to terminate Khan, was actually unable to articulate the "flagrant disregard of company interests" standard when questioned, falling back on the idea that it was "basically poor judgment."  Hilton's director of human resources testified, on the other hand, that he was not aware of a single instance of Khan exercising poor judgment during his tenure at Hilton.  Not one of Hilton's witnesses testified that the reason for Khan's termination was unsatisfactory performance, the reason specified in the termination record.

Additionally, the jury could have credited Thieling's testimony about how Hilton's culture was changing and Khan needed to change his ways as circumstantial evidence of a broader culture in which improper discriminatory animus against older, more seasoned employees motivated employment decisions.  The jury could also have considered in this connection the testimony regarding the general youthfulness of Hilton's new hires in the assistant front office manager position, along with the youth and inexperience of the employees hired to replace Khan directly, as additional circumstantial evidence of discriminatory animus.

The trial evidence, when taken as a whole and viewed in the light most favorable to Plaintiff, was sufficient to provide a non-speculative basis for the jury's determination that age was the but-for cause of Hilton's decision to terminate Plaintiff's employment.  Defendant's motion for judgment as a matter of law is denied.

Defendant's Motion for a New Trial

Legal Standard

A district court may set aside a jury's verdict and grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Despite the seeming breadth of the language of the Rule, the Second Circuit has made it clear that a new trial is only appropriate when the district court concludes that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice."  DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998) (alteration in original). When deciding whether to grant a new trial, the court is free to weigh the evidence independently, without drawing inferences in favor of the non-moving party, and may grant a new trial even if substantial evidence supports the jury's verdict.  Id. at 133-34.

To the extent that Defendant's motion for a new trial is premised on the argument that the jury's verdict is against the clear weight of the evidence, the motion is denied for substantially the reasons stated above.  Hilton also argues that a new trial is warranted because the Court erroneously admitted evidence relating to the disciplinary treatment of union employees who had also engaged in force selling.  Hilton asserts that, because Khan was not terminated for force selling, this evidence was irrelevant and prejudicial.  Hilton further asserts that the exclusion of its proposed evidence relating to Plaintiff's prior force sales was prejudicial insofar as evidence relating to union employees' force sales was admitted.

Evidence relating to force sales represented a considerable proportion of the testimonial and documentary evidence submitted by both sides at trial.  The concept of force selling, and whether it represented a violation of Hilton policy, was discussed by witnesses on both sides.  Eng, Hilton's corporate representative, testified at one point during cross-

examination that the force sale was the basis for Khan's termination.  Other witnesses repeatedly

returned to the force sale issue when discussing Khan's poor judgment.  The jury could

reasonably have concluded that force selling had some connection, pretextual or otherwise, to

Hilton's decision to terminate Khan.  Evidence regarding force selling therefore was relevant to

the question of the true reason for Khan's termination.

        Nor was the admission of evidence as to Hilton's decision not to terminate union

employees for force selling, or the exclusion of Khan's prior history of such activity, unfairly

prejudicial.  Hilton made it abundantly clear on the trial record that the union employees were

subject to bargaining agreement requirements for justification of a termination that did not apply

to non-union managers like Khan.  Although Hilton cites cases where union and non-union

employees have been found not to be similarly situated, those cases do not stand for the

proposition that a union employee and a non-union employee are <u>never</u> similarly situated, but

rather make clear that a fact-intensive analysis relating to whether employees are similarly

situated is required, and that union membership is just one relevant factor.  <u>See, e.g.</u>, <u>Irons v.</u>

<u>Bedford-Stuyvesant Community Legal Svcs.</u>, No. 13 CV 4467, 2015 WL 5692860, at *11-12

(E.D.N.Y. Sept. 28, 2015) (appeal docketed Oct. 26, 2015) (on motion for summary judgment,

considering various factors to determine whether employees were similarly situated, including

their job responsibilities, performance evaluation criteria, and union membership).  The jury was

properly provided with information regarding the employees' respective positions and duties,

applicable company policies, the difference between at-will and union employment, and the

discipline and termination provisions of the collective bargaining agreement.  The jury was also

instructed that it was to determine the weight and significance of the evidence submitted.  The

jury was therefore well-equipped to make any necessary factual determination as to whether the

differential in Hilton's treatment of Khan, Bido, and Bernal was indicative of prohibited discrimination.

Moreover, the exclusion of evidence of prior force selling for which Khan was not terminated did not render the trial fundamentally unfair because the ultimate liability issue was whether age was a but-for cause of Khan's termination, not whether any argument that Hilton terminated him because of force selling was plausible.

The evidence introduced at trial of Hilton managers' remarks concerning Plaintiff's tenure and retirement eligibility, in conjunction with the critical evaluation and his termination, as well as evidence concerning the ages of new hires for similar positions (including Khan's replacements) was in any event sufficient to support the jury's finding of age discrimination regardless of any consideration of the different discipline received by Khan and the union employees, or potential consideration of Khan's prior force sales.  Having considered the trial record in its entirety, the Court concludes that the jury's verdict was not seriously erroneous or a miscarriage of justice, and  Hilton's motion for a new trial is therefore denied.


Defendant's Motion for an Amended Judgment

Federal Rule of Civil Procedure 59(e) empowers a trial court to alter or amend the jury's verdict under certain circumstances.  Hilton seeks an amended judgment on three grounds: (1) Khan failed to properly mitigate his damages; (2) Khan's total back pay calculation included two categories of damages, Social Security benefits and pension losses, that were inappropriate predicates for damages as a matter of law; and (3) Khan's trial testimony calculations were not exactly aligned with his estimated total damages, which the jury adopted.

Hilton's arguments regarding mitigation are unavailing.  In an employment

discrimination case, a plaintiff must "use reasonable diligence in finding other suitable employment." Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 & n.15 (1982). Because mitigation is an affirmative defense to liability for damages, "[t]he employer bears the burden of proving that suitable work existed, and that the employee did not make reasonable efforts to obtain it." Clarke v. Frank, 960 F.2d 1146, 1152 (2d Cir. 1992).[5]

Hilton's broad argument that the entire back pay award should be vacated because Khan failed to exercise reasonable diligence is unavailing, as Khan presented considerable testimony, as well as documentary evidence, relating to his job search. Hilton cross-examined Khan on this issue, but offered no independent rebuttal of Khan's evidence. There was therefore a sufficient basis in evidence for the jury to conclude, as it did, that Khan exercised reasonable diligence in seeking alternative employment.

Hilton also makes a more targeted argument relating to whether Khan exercised reasonable diligence as a matter of law during two periods when Khan admittedly was not actively seeking employment: December 2012 through May 2013, and February 2014 forward. Khan testified that he was dealing with a family member's illness and was distraught from his termination during the first period, and that he had been discouraged by the lack of responses to his active job search and therefore drew on Social Security and pension benefits for income during the second. Khan also argues that the evidence shows he did not give up looking for employment altogether, because he had left his resume on file with some hotels, websites, and

---

[5]   Hilton notes, correctly, that an employer is relieved of the duty to establish that comparable employment is available if it can demonstrate that the plaintiff made "no reasonable efforts to seek such employment." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998). Given Khan's testimony about his job search, it cannot be said that he made "no" efforts, and the question of reasonableness was one for the jury to determine based on the trial record.

agencies.  Hilton's argument that Khan's conduct during these periods did not constitute
reasonable diligence was properly submitted to the jury, which had the duty of determining
whether Khan's search for employment was reasonable; the jury's determination that Khan's
search was reasonable was not manifestly incorrect or unjust.  See, e.g., Disanto v. McGraw-
Hill, Inc., No. 97 CV 1090, 1998 WL 474136, at * (S.D.N.Y. Aug. 11, 1998) (holding, on
summary judgment, that "it is a question of fact" whether a plaintiff's health conditions "would
[have made] any efforts by the plaintiff to find other employment unreasonable" and that
summary judgment was therefore inappropriate even though plaintiff "did not attempt to
mitigate his damages by finding other employment" (internal quotation marks omitted)).  Here,
the jury could have concluded, based on Khan's economic circumstances or other factors, that
his decision not to be proactive in his job search during the two periods of time was reasonable.
Hilton's motion to reduce the judgment on the basis of failure to mitigate is denied.[6]

       Hilton is correct to note, however, that the jury improperly accepted Khan's
estimate of $250,000 in total losses as the proper damages award.  First, the $250,000 figure did
not accurately represent the total value of lost wages and benefits that Khan identified in his
testimony, as detailed above.  Second, the estimated total of $250,000 that Khan provided
included $11,000 in claimed damages resulting from his decision to apply for early Social
Security benefits, which the Court had instructed the jury was not a proper basis for a back pay
award.[7]  Remittitur is therefore appropriate to conform the jury's award to Khan's specific

---

[6]    This determination should not be taken as any indication as to Khan's entitlement to
front pay damages, an issue that has yet to be addressed.

[7]    Hilton argues that Khan also improperly testified about lost pension benefits
resulting from his decision to begin receiving those benefits early.  However, Hilton
did not object to Khan's testimony about his pension benefits, nor did Hilton make a
contrary evidentiary proffer regarding why that loss was not caused by Khan's

testimony as to relevant categories of lost wages and benefits.  Khan identified $243,000 in total

losses, which must be reduced by $11,000 (the amount attributable to taking early Social

Security benefits).  The jury's back pay award is therefore reduced to $232,000.

CONCLUSION

For the foregoing reasons, Hilton's motion for a judgment as a matter of law and

for a new trial are denied.  Hilton's motion for an amended judgment is granted in part, and the

jury's back pay award is accordingly reduced to $232,000.  This Memorandum Opinion and

Order resolves docket entry no. 125.

A hearing on Plaintiff's claim for front pay will be held on April 4, 2016, at 9:30

a.m.

SO ORDERED.

Dated: New York, New York
       February 16, 2016

 /s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
United States District Judge

---

termination or cross-examine Khan on that issue.  It was not improper for the jury to
conclude, based on the unchallenged trial testimony, that Khan suffered a
compensable pension-related loss of benefits.